# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **RICKEY LEE HALTOM** | **CIVIL ACTION ON 06-1582** |
| **VS.** | **SECTION P** |
| **ROBERT RACHAL, ET AL.** | **JUDGE JAMES** |
| | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed *in forma pauperis* on September 13, 2006, by *pro se* plaintiff Rickey Lee Haltom. When he filed his complaint, plaintiff was an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC); he was incarcerated at the Steve Hoyle Rehabilitation Center (SHRC) in Talullah, Louisiana and, among other things, he complained of delayed and inadequate medical care at that facility.[1] He named SHRC's Assistant Warden, Robert Rachal, and SHRC's Director of Nursing, Damon Williams as defendants. He prayed for an unspecified amount of punitive and compensatory damages plus reimbursement for eye wear and medical expenses.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DENIED** and **DISMISSED WITH PREJUDICE** because the action is frivolous and fails to state a claim on which relief may be granted.

---

[1] On October 4, 2006 plaintiff advised the Clerk of his new mailing address – a post office box in Gilliam, Louisiana. It thus appears that plaintiff is no longer in the physical custody of the LDOC and is clearly no longer incarcerated at the SHRC. [3:06-cv-1055 at doc. 19]

1

*Statement of the Case*

On February 18, 2005, plaintiff made a sick-call request complaining of vision problems. [doc. 1-3, p. 1] Director of Nursing Damon Williams advised plaintiff that he had been placed on the list of patients to be examined. On September 22, 2005, plaintiff requested an eye examination and complained of headaches and blurred vision. [doc. 1-3, p. 4]

On October 10, 2005, plaintiff filed Administrative Remedies Procedure Grievance 2005-122 complaining of nausea and headaches and his inability to perform his assigned job as the institution's librarian. [doc. 1-3, p. 14, paragraphs 1-4] On October 11, 2005, S. Wilson, the SHRC ARP Screening Officer, responded to plaintiff's grievance and stated, "You currently have a Request for Administrative Review at the institutional and/or headquarters level, the request you submitted for administrative remedy that was received in this office on October 10, 2005, will be logged into the ARP system (ARP-SHRC-2005-122). This request will not be handled until all previously accepted requests have been completed at the institutional and/or headquarters level." [doc. 1-3, p. 3]

On October 25, 2005, plaintiff was examined by an optometrist at the David Wade Corrections Center. The optometrist concluded that plaintiff exhibited the condition known as astigmatism.[2] [*id.*, page 14, paragraph 6]

On December 14, 2005, plaintiff's ARP (2005-122) was denied because it contained multiple complaints. [*id.*, paragraph 5; doc. 1-3, p. 5]

Plaintiff received new eyeglasses on December 19, 2005. Nevertheless, he began to complain about his vision, and consequently he was placed on the waiting list to return to the

---

[2] Astigmatism is a condition in which the cornea (the clear covering of the front of the eye) has an abnormal curve, causing out-of-focus vision. See Medline Plus, Encyclopedia, A Service of the United States National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/ency/article/001015.htm

optometrist in order to determine whether an error had occurred with the prescription. [doc. 1-3, p. 8; p. 14, paragraphs 8-9] He was specifically advised by Nurse Williams that he would be put back on the list of patients needing to see the optometrist. [doc. 1-3, p. 14, paragraph 9]

In January, 2006, a group of inmates was examined by the optometrist; however, plaintiff was not among those examined. [*id.*, paragraph 10]

The next day, plaintiff confronted Nurse Williams who advised him that plaintiff's name "got mixed up." [*id.*, paragraph 11] (Plaintiff contends that Williams purposefully omitted him in retaliation for previous ARP's.) [*id.*, paragraph 12]

On March 1, 2006, plaintiff filed ARP 2006-27 complaining of headaches and nausea. On March 26 the ARP was entered in the system. [*id.*, paragraph 13; doc. 1-3, pp. 6-7]

On May 9, 2006, Nurse Williams responded to ARP 2005-27 by telling plaintiff that he was on a list and receiving on-going medical treatment. [*id.*, paragraph 14; doc. 1-3, p. 8] Plaintiff's appeal [doc. 1-3, p. 8] was apparently voluntarily dismissed because he assumed that he was on the list and would soon be examined. [*id.*, paragraph 15]

Again, on unspecified dates, other inmates were examined by the optometrist, but not plaintiff. [*id.*, paragraph 16]

On June 15, 2006, plaintiff filed a civil rights complaint in the United States District Court which was assigned Docket Number 3:06-cv-1055; in that action plaintiff complained of inadequate or delayed medical treatment of his hip and foot pain. [*id.*, paragraph 17]

On June 19, 2006, plaintiff filed ARP 2006-89 complaining of vision problems, headaches, and nausea. [*id.*, paragraph 18; doc. 1-3, pp. 9-10]

On July 19, 2006, Nurse Williams summoned plaintiff to the infirmary and advised him that he was scheduled to be examined by the optometrist the following day. He advised plaintiff

3

to fill out a sick-call request. Plaintiff questioned this advice but completed and submitted the request. [*id*., paragraph 20]

On July 20, 2006, plaintiff returned to David Wade Corrections Center where he was again examined by an optometrist. The optometrist could not locate plaintiff's records; however, he examined plaintiff's eyes and prescribed eye glasses. [*id*., paragraph 21]

On July 24, 2006, plaintiff received a response to the ARP. According to the response, "You remain on the list awaiting a scheduled appointment with the eye doctor; therefore, the medical care requested is ongoing until the appointment date. The eye doctor schedules his own appointments based upon priority of need." [*id*., paragraph 18; doc. 1-3, p. 11] Plaintiff's appeal of the ARP was submitted to the LDOC Secretary on July 26, 2006. [doc. 1-3, p. 12]

As of August, 2006, plaintiff had not yet received the glasses ordered on July 20, 2006, [doc. 1-3, p. 15, paragraph 23] nor had plaintiff received the response to the appeal of ARP 2006-89. [doc. 1-1, p. 2] Plaintiff signed his complaint on August 25, 2006 [doc. 1-1, p. 4].

Plaintiff complained of stomach bleeding which he attributed to over use of Tylenol and aspirin. [*id*., p., 15, paragraph 25; p. 16, 27-29]

*Law and Analysis*

*1. Exhaustion of Administrative Remedies*

The Civil Rights of Institutionalized Persons Act, codified at 42 U.S.C. §1997e, was amended on April 26, 1996, by the Prison Litigation Reform Act (PLRA). As amended, §1997e(a) makes the exhaustion of available administrative remedies mandatory in prison conditions cases.

Section 1997e(a) provides,

(a) Applicability of Administrative Remedies – <u>No action</u> shall be brought with respect to prison conditions under section 1983 of this title or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility <u>until such administrative remedies as are available are exhausted.</u> (Emphasis supplied)

This is a prison condition case, exactly the type of case which can best be resolved by corrections officials without resort to judicial action. With respect to plaintiff's claims, the pleadings, taken in the light most favorable to the plaintiff, establish that plaintiff failed to exhaust all available administrative remedies <u>before</u> filing this lawsuit as required by 42 U.S.C. §1997e(a).

As noted above, plaintiff was an inmate in the custody of Louisiana's Department of Public Safety and Corrections and was in their legal custody at all times relevant to this inquiry. Administrative remedies procedures have been adopted by the Louisiana Department of Public Safety and Corrections, sheriff's maintaining parish jails or correctional centers, and private corporations maintaining correctional centers. See LSA R.S. 15:1171 *et seq.*; 22 LA ADC Pt. I, § 325(LAC 22:I.325); LR 28:857 (April 2002); 28:4 La.Reg. 857.

In relevant part, the regulations governing administrative remedies for prisoners in the custody of the Louisiana Department of Public Safety and Corrections provide:

G. Process

1. First Step (Time Limit 40 days)

a. <u>The inmate commences the process by writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought</u> ... This letter should be written to the warden within 30 days of an alleged event. (This requirement may be waived when circumstances warrant. The warden, or his designee, will use reasonable judgment in such matters.) The requests shall be screened by the ARP Screening Officer and a notice will be sent to the inmate advising that his request is being processed or is being rejected. The warden may assign another staff person to conduct further fact-finding and/or information gathering prior to rendering his response. <u>The warden shall respond to the inmate within 40 days from the date the request is received at the First Step.</u>

b. For inmates wishing to continue to the Second Step, sufficient space will be allowed on the response to give a reason for requesting review at the next level.

> There is no need to rewrite the original letter of request as it will be available to all reviewers at each Step of the process.
>
> 2. Second Step (Time Limit 45 days)
>
> a. <u>An inmate who is dissatisfied with the First Step response may appeal to the Secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP Screening Officer within 5 days of receipt of the decision</u>. A final decision will be made by the Secretary and the inmate will be notified within 45 days of receipt. A copy of the Secretary's decision will be sent to the warden.
>
> \* \* \*
>
> 4. Deadlines and Time Limits
>
> a. No more than 90 days from the initiation to completion of the process shall elapse, unless an extension has been granted. Absent such an extension, <u>expiration of response time limits shall entitle the inmate to move on to the next Step in the process</u>. Time limits begin on the date the request is assigned to a staff member for the First Step response.

It appears that plaintiff did not exhaust all available administrative remedies before filing suit. Plaintiff filed three ARP grievances with respect to his vision problems. The first, ARP-2005-122 was initially denied because plaintiff already had an ARP pending in the system. [doc. 1-3, p. 3] It was subsequently denied by the first step responder because it contained multiple complaints. [doc. 1-3, p. 5] Plaintiff did not appeal this decision to the LDOC Secretary. Plaintiff filed a second ARP on March 1, 2006. This ARP grievance was designated ARP 2006-27. On May 9, 2006, Nurse Williams responded to this grievance by advising plaintiff that he was indeed on the list of inmates to be examined. Plaintiff did not appeal this decision. [doc. 1-3, p. 14, paragraph 15] Finally, plaintiff filed a third ARP grievance on July 19, 2006. This grievance was designated ARP 2006-89. On July 24, 2006 plaintiff received a response to the ARP [doc. 1-3, p. 11]; however, he appealed the decision to the LDOC Secretary on July 26, 2006. [doc. 1-3, p. 12] Plaintiff did not receive a response within 30 days and therefore signed and submitted the instant complaint on or about August 25, 2006. Under the regulation cited above, the LDOC

6

Secretary was required to respond within 45 days of the receipt of plaintiff's appeal. Plaintiff clearly did not wait 45 days before submitting his complaint to this court, and therefore the complaint was premature.

Under current law, plaintiff must have <u>fully</u> exhausted the administrative remedy procedure <u>before</u> proceeding herein. The statute provides for no exceptions.[3] The statute precludes any action on his claims because he failed to fully exhaust the administrative remedy procedure before filing suit. See also *Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir. 1998)(§1997e(a) "plainly requires that administrative remedies be exhausted <u>before</u> the filing of a §1983 suit, rather than while the action is pending ... [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."*);* *Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir. 1998)(dismissal for failing to exhaust administrative remedies is justified "as a deterrent to premature filing by...other potential litigants, thus serving the Congressional purpose of providing relief from frivolous prisoner litigation..." and "[b]y choosing to file and pursue his suit prior to exhausting administrative remedies as required, [the plaintiff] sought relief to which he was not entitled--that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").

Thus, since it does not appear that plaintiff fully exhausted administrative remedies prior to filing this suit, his complaint is subject to dismissal on that basis. Nevertheless, as is shown

---

[3] See also *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), "... we hold that the PLRA's exhaustion requirement <u>applies to all inmate suits about prison life</u>, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. (citation omitted)"

7

hereinafter, even if plaintiff could establish complete exhaustion of administrative remedies, his complaint would be subject to dismissal as frivolous.

## 2. Initial Review Pursuant to 28 U.S.C. §§1915 and 1915A

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a

constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). In addition, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's original complaint has been reviewed. Plaintiff's pleadings provide a detailed description of the factual basis of his claim along with his theories of liability with respect to each named defendant. Further amendment would serve no useful purpose.

Accepting all of plaintiff's allegations as true, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for which relief may be granted and accordingly, recommends dismissal of the complaint.

### 3. Deliberate Indifference

Plaintiff claims that he has been denied adequate medical care. Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a

9

significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). The fact that a plaintiff disagrees with what medical care is appropriate does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

Plaintiff has not alleged facts sufficient to establish deliberate indifference in this context. Plaintiff has not shown that the defendants were aware of facts from which an inference of substantial risk of serious harm could be drawn. Further, even if he had made such a showing, he has failed to show that the defendants actually drew such an inference and that their response to his complaints indicated that they subjectively intended that harm occur to him. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 458-459 (5th Cir.2001).

In addition, whether or not the defendants "should have perceived" a risk of harm to plaintiff, but did not, is of no moment since "...the failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

Plaintiff's allegations of fact have been accepted as true for the purposes of this Report. The complaint reveals that on each occasion that plaintiff complained about his vision to the defendants, he was afforded some medical treatment.[4]

Plaintiff, of course, disagrees with the diagnoses made by the defendants and the efficacy of the treatment provided; however, his disagreement with diagnosis and treatment is insufficient to state a claim for deliberate indifference. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997).

In short, the facts alleged herein, taken as true for the purposes of this Report, do not establish that the defendants were deliberately indifferent to a serious medical need. Plaintiff's claims are therefore frivolous and dismissal on that basis is recommended.

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.[5] A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

---

[4] While it appears that plaintiff's February, 2005 sick-call request went unheeded, his September 22 and October 10 requests resulted in an examination by the optometrist at David Wade Corrections Center on October 25, 2005. Based upon that examination, plaintiff was prescribed eye glasses which he received on December 19, 2005. While his subsequent informal complaints went unheeded, his formal grievance, filed on June 19, 2006 resulted in a second examination at David Wade Corrections Center on July 20, 2006.

[5] **Should plaintiff choose to object to this Report and Recommendation, he should provide evidence to establish that he completely exhausted administrative remedies PRIOR to filing this suit.**

**proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

      **THUS DONE AND SIGNED** in Chambers at Monroe, Louisiana, this 14th day of November, 2006.

                                             KAREN L. HAYES
                                             U. S. MAGISTRATE JUDGE